**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| NRRM, LLC d/b/a CARSHIELD, and AMERICAN AUTO SHIELD, LLC,<br><br>        Plaintiffs,<br><br>    vs.<br><br>PELICAN INVESTMENT HOLDINGS, LLC,<br><u>Serve</u>:  Corporate Creations Network Inc.<br>        1521 Concord Pike, Suite 201<br>        Wilmington, DE 19803<br><br>NATIONAL ADMINISTRATIVE<br>SERVICE CO., LLC,<br><u>Serve</u>:  Corporation Service Company<br>        1160 Dublin Road, Suite 400<br>        Columbus, OH 43215<br><br>SING FOR SERVICE, LLC d/b/a<br>MEPCO,<br><u>Serve</u>:  Registered Agent Solutions, Inc.<br>        838 Walker Road, Suite 21-2<br>        Dover, DE 19904<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>COMPLAINT</u>

Plaintiffs NRRM, LLC d/b/a CarShield and American Auto Shield, LLC ("AAS") submit this Complaint for monetary damages and injunctive relief against Defendants Pelican Investment Holdings, LLC, National Administrative Service Co., LLC ("NASC"), and Sing for Service, LLC, d/b/a Mepco ("Mepco").

### INTRODUCTION

1.    This is a false advertising and unfair competition case brought under the Lanham Act and state common law. Defendants—players in the extended car warranty sector—use false

1

and deceptive practices to steal customers from Plaintiffs and induce consumers into purchasing Defendants' competing automotive warranty products.

2.      An extended car warranty, technically referred to as a "vehicle service contract" or "protection plan," is a contractual product marketed as coverage for the cost of future repairs once a manufacturer's original warranty expires. For most companies in the industry—including Defendants—the process can be fragmented and involve multiple actors: (i) a seller or marketing company that promotes and sells coverage directly to consumers over the phone; (ii) a financing company that facilitates installment payments; and (iii) a third-party administrator that manages claims and is responsible for honoring the coverage when mechanical issues arise.

3.      Plaintiffs are distinct. Unlike many competitors, CarShield does not outsource administration to unrelated third parties. Instead, CarShield administers its protection plans through an affiliated in-family administrator, ensuring accountability and consistency in servicing customers.

4.      Plaintiffs are recognized, reputable providers in this marketplace. CarShield has worked diligently since its founding to achieve recognition as a leading extended car warranty provider. Its affiliate and wholly owned administrator, AAS, handles claims administration and provides contract support for CarShield customers, reinforcing the reliability and transparency of Plaintiffs' offerings.

5.      Defendants' marketing practices, however, are anything but honest. Through their marketing operations, Pelican directly targets Plaintiffs' existing and prospective customers without consent. These calls misrepresent that Pelican is contacting customers of CarShield to "switch" them to Pelican's plan.

6.    In the course of these calls, Pelican makes specific and demonstrably false statements designed to discredit Plaintiffs and induce customers to terminate or avoid doing business with CarShield. For example, Pelican falsely states that car dealers and repair shops won't take CarShield's plans anymore and that CarShield does not administer its own claims. These statements are not only literally false, they are material to consumers' purchasing decisions, and they damage Plaintiffs.

7.    By making these false and misleading statements, Defendants unlawfully divert consumers from Plaintiffs to themselves, damage Plaintiffs' goodwill and credibility in the marketplace, and unlawfully distort competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state law.

8.    Pelican further exploits Plaintiffs by apparently obtaining and using Plaintiffs' confidential customer lists—information not available to the public and only obtainable through unlawful means. Using this data, Pelican tortiously interferes with existing contracts between customers and both CarShield and its owned administrator AAS.

9.    The Pelican contracts sold through these tactics are written for NASC. NASC is not a passive beneficiary of Pelican's conduct. Rather, as the principal on whose behalf the contracts are sold, NASC is legally responsible for the false and misleading statements made in marketing its products. NASC knows of and benefits directly from Pelican's unlawful methods, continues to authorize, participate in, and ratify Pelican's conduct as NASC's marketer, and therefore shares liability under the Lanham Act and state law. Indeed, numerous consumers have publicly complained in reviews and online forums of Pelican and NASC's deceptive tactics, placing NASC on unmistakable notice of these practices. Despite this, NASC continues to bury its head in the sand and ratify and profit from the false advertising scheme.

3

10.     Mepco is the money behind it all. It finances the contracts sold by Pelican on behalf of NASC. Far from being a neutral funder, Mepco materially participates in and enables the unlawful scheme by approving and processing the consumer contracts, disbursing funds to Pelican and NASC, and continuing to support Pelican knowing or when it reasonably should have known of the false advertising practices. Mepco, like NASC, cannot plausibly claim ignorance. By continuing to provide the essential financial infrastructure that allows these contracts to exist and by knowingly profiting from falsely advertised sales, Mepco is a necessary participant in the Lanham Act and state law violations.

11.     Both CarShield and AAS are directly injured by Defendants' misconduct. CarShield loses customers and market share when its name and brand are disparaged and consumers are diverted to Defendants through false statements. Its goodwill and reputation, carefully built over years, are undermined every time Defendants misrepresent the quality or validity of CarShield's protection plans, in violation of the Lanham Act.

12.     AAS, as CarShield's affiliated company, is also directly harmed. Defendants' false statements target AAS by claiming CarShield does not administer its own claims, when in fact it does. These lies erode consumer trust, damage AAS's reputation in the marketplace, and divert business away from Plaintiffs, in violation of the Lanham Act and state law.

13.     Plaintiffs bring this action to halt Defendants' unlawful conduct, to recover damages caused by their false and misleading advertising, and to protect both consumers and fair competitors from further harm.

4

**PARTIES**

14.     Plaintiff NRRM, LLC is a Missouri limited liability company, doing business as CarShield, with its principal place of business located in St. Peters, Missouri—within this judicial district. CarShield sells vehicle protection plans.

15.     Plaintiff American Auto Shield, LLC is a Wyoming limited liability company with its principal place of business located in Lakewood, Colorado. AAS is part of the CarShield family of companies and is the official administrator of the vehicle protection plans sold by CarShield. In that role, AAS contracts with customers for repair claims, processes claims, and oversees the delivery of automotive warranty benefits under CarShield's protection plans.

16.     Defendant Pelican Investment Holdings, LLC is a Delaware limited liability company, with its principal place of business located at 1300 Old Congress Road, West Palm Beach, FL 33409. Pelican holds itself out to the public as doing business as "Auto Service Department," "ASD," or "AAP" (Affordable Auto Protection). Pelican also conducts operations out of California from an address at 555 N. Park Drive, Suite 200, Santa Ana, CA 92705. Pelican sells NASC vehicle protection plans nationwide, including to consumers in Missouri and within this judicial district, where it conducts substantial business and engages in the unlawful marketing practices and false advertising that give rise to this action.

17.     Defendant National Administrative Service Co., LLC is an Ohio limited liability company with its principal place of business located at 5500 Frantz Road, Suite 120, Dublin, OH 43017. Pelican markets and sells NASC's vehicle protection plans nationwide, including to consumers in Missouri and within this judicial district, and NASC's plans are sold by other marketers across the country as well.

18.     Defendant Sing for Service, LLC is a Delaware limited liability company, doing business as "Mepco," "Mepco Payment Services," or "Mepco Finance Corporation," with its principal place of business located at 10 S. LaSalle Street, Suite 2310, Chicago, IL 60603. Mepco finances the Pelican/NASC vehicle protection plans nationwide, including in Missouri, and also finances other vehicle service contracts marketed by different companies. Mepco provides the essential financing structure that allows Pelican and NASC to profit from their deceptive sales, including by approving installment contracts for consumers located in Missouri and this judicial district, disbursing funds to Pelican and NASC, and retaining profits derived from the unlawful scheme.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over Plaintiffs' claims arising under the Lanham Act, codified at 15 U.S.C. § 1125(a), pursuant to 28 U.S.C. § 1331.

20.     Plaintiffs' state law claims for injurious falsehood, unfair competition, and tortious interference are so related to Plaintiffs' claims under the Lanham Act, over which this Court has original jurisdiction, that they form part of the same case or controversy. Supplemental jurisdiction is therefore appropriate over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

21.     This Court has personal jurisdiction over Defendants because each Defendant, respectively, markets, sells, finances, or administers vehicle protection plans that compete directly with Plaintiffs' plans in Missouri. In doing so, Defendants use false and misleading statements about Plaintiffs in marketing directed to Missouri residents. These acts constitute tortious conduct within Missouri that has caused, and continues to cause, injury to Plaintiffs and impacts or affects residents of Missouri. Defendants also derive substantial revenue from their business activities, including false advertising, in Missouri. Accordingly, this Court has personal jurisdiction over

6

each Defendant pursuant to Missouri's long-arm statute, Mo. Rev. Stat. § 506.500, and consistent with due process.

22.    Exercising personal jurisdiction over Defendants comports with the Due Process Clause of the United States Constitution and does not offend traditional notions of fair play and substantial justice. Plaintiffs' claims arise out of, and are directly related to, Defendants' contacts with Missouri, including their literally and materially false and misleading statements made to Missouri residents about Plaintiffs, which have caused and continue to cause injury to Plaintiffs.

23.    Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and because Defendants transact business and cause injury here.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.    CarShield's and American Auto Shield's Business

24.    CarShield has for many years served as the nation's leading seller of vehicle protection plans—protecting millions of vehicles and drivers.

25.    In connection with the sale and marketing of its protection plans sold throughout the United States, CarShield utilizes and owns a set of federally-registered trademarks, including marks for CARSHIELD and CARSHIELD.COM.

26.    CarShield has continuously used its marks in interstate commerce since 2016 to advertise, market, and promote its vehicle protection plans.

27.    Through extensive and ongoing national advertising, marketing, and promotional campaign efforts, CarShield has generated substantial goodwill and consumer recognition.

28.     The established and continued success of CarShield can hardly be overstated. Even Newsweek has repeatedly honored CarShield by naming it among the "Most Trusted" auto warranty brands.

29.     CarShield has been featured across major television and radio outlets across the country, alongside some of the biggest names in the entertainment and news industries.

30.     By virtue of CarShield's extensive, continuous, and exclusive promotion and use of the CarShield marks to advertise, promote, distribute, and sell warranties, consumers across the United States recognize the CarShield marks and CarShield brand as belonging to CarShield, associate the services offered and sold under the CarShield marks exclusively with CarShield, and recognize and trust CarShield as the source of the warranties offered for sale and sold under the CarShield trademarks.

31.     CarShield has earned valuable goodwill from being widely recognized, associated with, and identified by consumers and the trade.

**B.     Defendant Pelican Knowingly Makes False Statements About CarShield and Itself to Steal Customers From CarShield**

32.     Defendant Pelican is a direct competitor of CarShield. It also sells auto warranties to consumers.

33.     At some point, Pelican, according to its own salespeople, unlawfully obtained CarShield's non-public customer lists. Pelican then targets those customers by calling them and telling them they must switch plans based on multiple false and misleading statements.

34.     In these calls, Pelican's representatives make at least three separate lies that are designed to induce customers to cancel their CarShield coverage and purchase Pelican's marketed plan instead:

8

a.      *First*, Pelican salespeople falsely tell customers that repair shops and car dealerships will no longer accept CarShield coverage. That statement is literally false. In fact, most reputable repair shops and dealerships accept CarShield coverage. American Auto Shield—the administrator that pays CarShield warranty repair claims—has paid hundreds of millions of dollars in repair clams to shops and dealers for CarShield customers across the country.

b.      *Second*, Pelican salespeople falsely tell customers that CarShield uses unrelated third parties to administer and pay repair claims. That is also false. CarShield and American Auto Shield are affiliated entities within the same family of companies.

c.      *Third*, Pelican salespeople falsely tell customers that, unlike CarShield, Pelican administers its own repair claims. That too is false. Defendant NASC, not Pelican, administers the contracts sold by Pelican, and NASC is a separate company with no relation to Pelican.

35.     Each of these false statements is material to consumers' purchasing decisions and is intended to divert business away from CarShield by creating the false impression that CarShield's plans are inferior, unaccepted, or third-party administered.

36.     As a result of these false representations, consumers have been deceived, diverted, and induced to cancel CarShield coverage and to purchase Pelican plans instead, causing direct economic and reputational injury to Plaintiffs.

**C.      Defendant NASC Knowingly Allows Pelican to Sell Its Vehicle Services Contracts Using Unlawful Methods**

37.     Pelican sells vehicle protection plans administered by NASC pursuant to a written agreement between them.

38.     That agreement requires Pelican to comply with all laws and grants NASC authority to review, approve, and control Pelican's advertising.

39.     Despite these contractual obligations, NASC knowingly allows Pelican to engage in unlawful telemarketing and false advertising. Indeed, NASC knows that Pelican mass dials customers without their permission and then on sales calls engages in unlawful sales tactics and false and misleading advertising. Yet NASC turns a willful blind eye to it.

40.     Pelican's unlawful calling and sales tactics are widely known and publicly documented in consumer complaints and Better Business Bureau filings. NASC is aware of these complaints and the nature of Pelican's misrepresentations and false advertising but has taken no corrective action.

41.     Instead, NASC continues to authorize Pelican to sell NASC-administered plans, knowing full well that some sales are obtained unlawfully.

**D.      Defendant Mepco Knowingly Finances Consumer Contracts Procured Through Pelican's Unlawful Sales Tactics**

42.     Mepco finances the entire Pelican-NASC operation.

43.     After Pelican secures a sale through false advertising, convincing a customer to switch from CarShield to Pelican, Mepco then handles the payment plan a customer will use to pay for the warranty over the next year to two.

44.     For each sale obtained through Pelican's deceptive practices, Mepco funds the contract, remits profits to NASC, and retains its own share.

45.     Mepco has financed and profited from these transactions despite knowing, or at a minimum having ample reason to know, of Pelican's unlawful telemarketing and false advertising practices.

46.    Without Mepco's continued financing, Pelican and NASC could not sustain or expand their deceptive scheme. Mepco's ongoing funding and knowing participation in the unlawful sales tactics and false advertising therefore materially contributes to the misconduct.

**E.    Defendants' Conduct is Willful**

47.    Defendants' actions are deliberate, willful, and calculated to mislead consumers and to unfairly compete with CarShield and AAS. Defendants have acted with knowledge of the falsity of their statements.

48.    Defendants' concerted conduct and scheme has caused and continues to cause substantial harm to Plaintiffs, their sales, their goodwill, and their business reputation.

**CAUSES OF ACTION**

**COUNT I**
**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – False or Misleading**
**Description of Fact as to CarShield**
**(CARSHIELD v. PELICAN)**

49.    CarShield restates and incorporates by reference the allegations in the preceding paragraphs.

50.    Defendant Pelican's conduct, as described herein, constitutes false and misleading representations of fact in commercial advertising or promotion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

51.    Pelican has intentionally made false and misleading statements to consumers, including that (a) repair shops and car dealers will no longer accept CarShield coverage, (b) CarShield uses unrelated third parties to pay repair claims, and (c) Pelican administers its own repair claims.

11

52.     Each of these statements is literally false, material, and likely to deceive consumers and influence purchasing decisions by diverting customers away from CarShield and toward Pelican.

53.     Pelican's false and misleading statements have caused and continue to cause injury to CarShield, including loss of sales, diverted business, damage to goodwill, and harm to its business reputation and value of its marks.

54.     CarShield is entitled to recover its actual damages and Pelican's profits, as well as injunctive relief, enhanced damages, costs, and attorneys' fees.

**COUNT II**
**Injurious Falsehood Under Missouri Common Law**
**(CARSHIELD v. PELICAN)**

55.     CarShield restates and incorporates by reference the allegations in the preceding paragraphs.

56.     Pelican published false and disparaging statements about CarShield to consumers during sales calls, knowing the statements were false or acting in reckless disregard of their falsity.

57.     Pelican made these statements with extreme malice and with the intent to harm CarShield's goodwill, business reputation, and to divert customers.

58.     As a direct and proximate result, CarShield has lost an untold number of customers and revenue, an amount which will be revealed during discovery and is likely to lose more business. CarShield has also suffered loss of goodwill and harm to its reputation. In addition, Pelican has been unjustly enriched through profits obtained from its false statements that should be disgorged.

## COUNT III
### Unfair Competition Under Missouri Common Law
### (CARSHIELD v. PELICAN)

59.     CarShield restates and incorporates by reference the allegations in the preceding paragraphs.

60.     In connection with the marketing and selling of competing auto warranties, Pelican made the aforementioned material misrepresentations about CarShield and itself that were false and are likely to deceive actual and prospective purchasers of auto warranties.

61.     Pelican engaged in these sales tactics and published these false statements about CarShield to consumers on sales calls.

62.     Pelican knew the statements were false and material when made, and made them with extreme malice in order to divert and steal customers from CarShield.

63.     As a direct and proximate result of Pelican's false statements and unfair competition, and NASC's participation in, approval of and/or ratification of the scheme, CarShield has been damaged through diversion of customers. CarShield has lost an untold number of customers and revenue, an amount which will be revealed during discovery and is likely to lose more business.

## COUNT IV
### Tortious Interference With Contracts
### (CARSHIELD and AMERICAN AUTO SHIELD v. PELICAN)

64.     CarShield and American Auto Shield restate and incorporate by reference the allegations in the preceding paragraphs.

65.     CarShield sells vehicle service contracts to consumers that are administered by its affiliate American Auto Shield, with whom customers are in contractual privity.

13

66.     Pelican has knowledge of the contractual relationships between CarShield customers and American Auto Shield, as Pelican acknowledges and references these contracts in its sales calls.

67.     During those calls, Pelican intentionally instructs customers step-by-step how to cancel their CarShield/American Auto Shield contracts after purchasing Pelican's plans, thereby intentionally inducing customers to terminate their contracts with American Auto Shield.

68.     Pelican's interference was accomplished through false and misleading statements, without any legitimate justification, and with intent to injure Plaintiffs.

69.     As a direct and proximate result, CarShield and American Auto Shield have suffered and will continue to suffer monetary loss and damages in amount to be proven after discovery.

**COUNT V**
**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a)**
**Vicarious Liability, Agency, Apparent Authority, Contributory Infringement**
**(CARSHIELD v. NASC)**

70.     CarShield restates and incorporates by reference the allegations in the preceding paragraphs.

71.     NASC entered into a written agreement with Pelican for Pelican to act as NASC's seller for marketing and promoting NASC's vehicle service warranties to consumers.

72.     NASC requires in writing that Pelican comply with all laws.

73.     NASC also has the right to edit, approve, and/or control Pelican's advertising, but either did not, or willfully declined to control, Pelican's sales and advertising activities.

74.     Acting on behalf of NASC as its selling agent, Pelican made unsolicited calls to CarShield's customers and others, and intentionally misled and lied to consumer during those calls.

14

75.     NASC knew or should have known of Pelican's sales tactics, and at a minimum has turned a blind eye to them.

76.     NASC also has constructive knowledge of Pelican's sales tactics through publicly available materials including but not limited to Better Business Bureau complaints.

77.     NASC has not taken appropriate measures to prevent its selling agent Pelican from intentionally misleading consumers about CarShield or CarShield products when selling NASC products.

78.     By failing to take appropriate measures to prevent its agent Pelican from intentionally misleading consumers about CarShield or CarShield products, NASC has turned a blind eye to and ratified and affirmed the sales tactics of its selling gent Pelican.

79.     NASC has benefited from Pelican's sales tactics.

80.     NASC honors the vehicle service contracts that derive from Pelican's false promotion of NASC products, including those that derived from Pelican's intentionally false and misleading statements about CarShield.

81.     In fact, when Pelican completes the sale to a customer, NASC causes its contract with the consumer be sent to that consumer, which notes that it is an NASC contract, and from there forward has all the communications with the customer.

82.     NASC thus also provides apparent authority over Pelican because a reasonable consumer would believe that NASC consents to Pelican's sales methods. as if done at NASC's direction or with NASC's knowledge.

83.     NASC has a direct financial interest in in the false advertising because it allows Pelican to sell more NASC contracts that way.

84.     NASC materially contributed to or induced the false advertising by providing the auto warranty plans for Pelican to sell.

85.     As a direct and proximate result of NASC using Pelican as its selling agent and then honoring customer contracts that derive from Pelican's intentionally false and misleading statements about CarShield when promoting NASC products, NASC is vicariously liable for Pelican under the theory of agency, apparent authority and contributory infringement and CarShield is entitled to damages from NASC in an amount to be determined in discovery.

**COUNT VI**
**Common Law  Injurious Falsehood**
**Vicarious Liability  - Agency, Apparent Authority, Ratification**
**CARSHIELD v. NASC**

86.     CarShield restates and incorporates by reference the allegations in the preceding paragraphs.

87.     NASC is vicariously liable for Pelican's publication of false statements about CarShield because Pelican acted as NASC's authorized agent in selling NASC-administered plans.

88.     As a direct and proximate result of NASC's actions, as described in Count V, CarShield has been damaged as previously alleged.

**COUNT VII**
**Common Law Unfair Competition**
**Vicarious Liability  - Agency, Apparent Authority, Ratification**
**(CARSHIELD v. NASC)**

89.     CarShield restates and incorporates by reference the allegations in the preceding paragraphs.

90.     NASC is vicariously liable for Pelican's unfair competitive practices because Pelican acted as NASC's authorized seller and NASC knowingly permitted and profited from Pelican's false advertising.

91.     As a direct and proximate result of NASC's actions, as described in Count V, CarShield has been damaged as previously alleged.

**COUNT VIII**
**Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a)**
**Vicarious Liability, Ratification, Contributory Liability**
**(CARSHIELD v. MEPCO)**

92.     CarShield restates the allegations contained in the preceding paragraphs.

93.     Mepco has retained and entered into a formal agreement with Pelican for Pelican to act as Mepco's finance company. That agreement requires Pelican to comply with all laws.

94.     When Pelican makes a sale, including using the false advertising methods described herein, Pelican signs customers up to use Mepco as the financing arm where customers then make their monthly payments.

95.     Mepco then funds Pelican and NASC a portion of their profits from each sale and Mepco itself makes money off each sale.

96.     Mepco knew or reasonably should have known that Pelican was using the tactics described herein.

97.     Despite this, Mepco continues to finance the entire operation and scheme and has not enforced its agreement with Pelican.

98.     Despite such knowledge, Mepco has not taken appropriate measures to stop the financing of the scheme, which would come to an end without Mepco's funding.

99.     Mepco has thus ratified and affirmed the conduct of Pelican and is therefore vicariously liable for Pelican's continued unlawful conduct.

100.    Mepco also materially contributed to or induced the false advertising by providing the financing that allowed the operation to continue.

17

101.    As a direct and proximate result of Pelican's actions as ratified and contributed to by Mepco, CarShield is entitled to damages from Mepco in an amount to be determined in discovery.

**COUNT IX**
**Common Law  Injurious Falsehood**
**Vicarious Liability  - Ratification**
**CARSHIELD v. MEPCO**

102.    CarShield restates the preceding paragraphs as if set forth herein.

103.    Mepco is vicariously liable for Pelican's injurious falsehoods.

104.    As a direct and proximate result of Mepco's actions, as described in Count X, CarShield has been damaged as previously alleged.

**COUNT X**
**Common Law Unfair Competition**
**Vicarious Liability  - Agency, Apparent Authority, Ratification**
**CARSHIELD v. MEPCO**

105.    CarShield restates the preceding paragraphs as if set forth herein.

106.    Mepco is vicariously liable for Pelican's unfair competition and materially contributed to the continuation of Pelican's false advertising and deceptive sales practices.

107.    As a direct and proximate result of Mepco's actions, as described in Count X, CarShield has been damaged as previously alleged.

**PRAYER FOR ALL COUNTS**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants, and that this Court:

A.    Award Plaintiffs all damages and other monetary relief available as a result of Defendants' false advertising and tortious interference scheme, such damages and monetary relief including, but not limited to, actual damages, lost profits, Defendants' profits, statutory damages,

18

enhanced damages, treble damages, attorneys' fees, and all other monetary relief available under

15 U.S.C. § 1117 and other applicable federal and state laws in an amount to be determined at trial;

B.      Order an accounting and disgorgement of all profits, revenues, and other benefits

unjustly obtained by Defendants as a result of their unlawful conduct;

C.      Enter preliminary and permanent injunctive relief restraining Defendant Pelican

and their successors, assigns, affiliates, employees, partners, and anyone acting in concert with

them or at their behest or direction, to turn over the CarShield customer lists they claim to have,

to cease using and permanently delete CarShield customer lists, and to cease making false

statements about CarShield; and

D.      Award Plaintiffs such other and further relief, including costs and pre and post-

judgement interest, as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 20th day of October, 2025.

By:___ /s/*Jeffrey H. Kass*_____
            Jeffrey H. Kass, E.D. Mo. #60672
            Georgiana Gnibus, E.D. Mo. #75573
            1125 17th St, Suite 500
            Denver, CO 80202
            Tel: (303) 723-8400
            Fax: (844) 670-6009
            Email: JKass@dickinson-wright.com
                       ggnibus@dickinson-wright.com

            *Attorneys for Plaintiff*

4935-0527-7809 v1 [105444-75]

19