**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| NRRM, LLC d/b/a CARSHIELD, and AMERICAN AUTO SHIELD, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS, LLC, NATIONAL ADMINISTRATIVE SERVICE CO., LLC, and SING FOR SERVICE, LLC d/b/a MEPCO,<br><br>*Defendants.* | No. 4:25-cv-01566-MAL |

**MEMORANDUM & ORDER**

Before the Court is Defendant Pelican Investment Holdings, LLC's ("Pelican") Motion to Dismiss all claims against Pelican in the Second Amended Complaint (Counts I, II, III, IV, and XI). (Doc. 102). For the following reasons, the Court **DENIES** the motion.

## I. Facts and Background[1]

This case is about communications regarding vehicle extended warranties (Doc. 94 at ¶ 1). Plaintiffs and Defendant Pelican sell car extended warranties. *Id*. According to CarShield, for most companies in the car extended warranty sector, the process can be fragmented and include multiple actors from the seller or marketing company that promotes the coverage, to the financing company that facilitates payments, to a third-party administrator that manages claims and is responsible for honoring coverage when issues arise. *Id*. at ¶ 3. CarShield's edge in the business is that it does not outsource claims, but rather its warranties are administered by an

[1] All facts pleaded in the complaint are assumed true when deciding a motion to dismiss under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 556 (2007).

affiliated, in-family administrator. *Id.* at ¶ 5. According to CarShield, products that are marketed as being administered by an affiliated, in-family administrator signal accountability and reliability, as opposed to the perceived risk of a product administered by an unrelated third party. *Id.* at 4. CarShield has worked to build brand recognition and consumer trust as a leading provider of car extended warranty products. *Id.* at ¶ 6.

Pelican launched a telemarketing operation to undermine CarShield's reputation. *Id.* at ¶¶ 7–8. It went like this. Pelican would call CarShield's existing and prospective customers about switching their coverage to a Pelican plan. *Id.* at ¶ 8. During the call, Pelican would make false statements such as telling consumers that car dealers and repair shops no longer accept CarShield plans and that CarShield does not administer its own claims. *Id.* at ¶ 56.

CarShield believes that Pelican obtained and used CarShield's confidential customer lists to target CarShield's customers. *Id.* at ¶ 11. Because of Pelican's calls, consumers have called or attempted to cancel CarShield coverage, purchased Pelican plans, or asked for refunds, clarification, or emergency assistance. *Id.* at ¶ 60.

Pelican sold contracts written for National Administrative Service Co. ("NASC"). *Id.* at ¶ 12. NASC controls Pelican's advertising and marketing of NASC's warranty contracts. *Id.* at ¶ 13. Mepco financed the scheme and the contracts Pelican sold on behalf of NASC. *Id.* at ¶ 14.

CarShield's Second Amended Complaint ("Operative Complaint") brings eleven counts. Pelican moves to dismiss all counts against it: Count I (the Lanham Act claim), Count II (the injurious falsehood claim), Count III (the unfair competition claim), Count IV (the tortious interference claim), and Count XI (the Defend Trade Secrets Act claim).

## II. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to

dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a probability requirement. *Id.* (internal citations omitted). A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. At this stage, the Court accepts as true the factual allegations in the complaint. *Id.*

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id.*

## III. Application of Law to Fact

### A. Count XI: Misappropriation of Trade Secrets Claim

In Count XI, CarShield brings a claim for misappropriation of trade secrets in violation of the Defend Trade Secrets Act (Doc. 94 at 44). Pelican moves to dismiss this Count, arguing that (1) CarShield fails to plead that the customer information Pelican allegedly used qualifies as a trade secret, and (2) CarShield fails to allege misappropriation by improper means (Doc. 103 at 10–11). Because neither of Pelican's arguments succeed, the Court denies the motion to dismiss Count XI.

**1. Because the Operative Complaint pleads that the customer information Pelican allegedly used qualifies as a trade secret, this is not a reason to dismiss Count XI.**

Because the Operative Complaint pleads that the customer information Pelican allegedly used qualifies as a trade secret, this is not a basis for dismissing Count XI. A misappropriation of trade secrets claim requires demonstration of (1) the existence of a protectable trade secret, and (2) misappropriation of that trade secret. *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 955 (8th Cir. 2023). Under the Defend Trade Secrets Act, a trade secret is information "the owner [ ] has taken reasonable measures to keep such information secret," and "the information derives independent economic value … from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Pelican argues that Count XI should be dismissed because the only trade secret the Operative Complaint identifies is CarShield's customer information, and that CarShield's customer information is not a trade secret because it was readily ascertainable. (Doc. 103 at 10). Pelican argues that because CarShield's customer information could be gathered through lawful means, such as from individual customers, commercial data brokers, lead aggregators, and consumer quote websites, it is not a trade secret. *Id.* Maybe this is true, but the question at the motion to dismiss stage is not whether CarShield's information can actually be gathered through lawful means (this would require evidence), but whether the Operative Complaint alleges sufficient facts to state a cause of action for misappropriation of trade secrets in violation of the Defend Trade Secrets Act. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)).

Here, the Operative Complaint alleges:

- The confidential customer information "was nonpublic, customer-specific, and included sensitive details that could only have originated

from CarShield or a CarShield confidential commercial relationship subject to secrecy obligations." (Doc. 94 at ¶ 198).

- The confidential customer information "is not publicly available or readily ascertainable by competitors through proper means." Rather, "It reflects Carshield's longstanding relationships with its customers and the ongoing performance of vehicle service contracts administered on their behalf." (Doc. 94 at ¶ 43).
- "CarShield takes reasonable and ongoing measures to maintain the secrecy of its Confidential Customer Information. Access to this information is limited to employees and service providers with a legitimate business need to know. For example, CarShield imposes confidentiality obligations on its employees and requires third parties—such as payment processing providers—to agree to contractual restrictions governing the use, retention, and disclosure of CarShield's Confidential Customer Information. Carshield also employs technical, administrative, and internal policy-based controls designed to prevent unauthorized access, use, or disclosure." *Id.* at ¶ 45.

At the motion to dismiss stage, these facts are sufficient to allege the existence of a trade secret as it could be inferred from these facts that the confidential customer information was not readily ascertainable.

**2. Because Operative Complaint alleges that Pelican misappropriated CarShield's confidential customer information by improper means, this is not a basis for dismissing Count XI.**

Next, Pelican argues that the Operative Complaint fails to allege misappropriation by improper means, as it alleges is required by 18 U.S.C. § 1839(5). (Doc. 103 at 11). Not so.

Misappropriation by "improper means" "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6). Pelican argues that the Operative Complaint fails to allege more than mere belief that CarShield's

confidential customer information was acquired through improper means, or even that Pelican had the opportunity to do so, which is insufficient to allege a claim for misappropriation of trade secrets. (Doc. 103 at 12).

Here, the Operative Complaint alleges that:

- "Pelican obtained CarShield's Confidential Customer Information from sources presently unknown," (Doc. 94 at ¶ 197).
- "Pelican's ability to identify and contact CarShield customers is consistent with access to and use of nonpublic, confidential information not generally known or commercially available…," (Doc. 94 at ¶ 85).
- "Pelican at all times knew or had reason to know that the CarShield Confidential Customer Information it received, possessed, and used was obtained through improper means, as Pelican understands that such customer-specific information of this nature is not public or commercially available….," (Doc. 94 at ¶ 89).
- "CarShield closely guards [the Confidential Customer Information] that could only have originated from CarShield or a prior confidential commercial relationship with CarShield." (Doc. 94 at ¶ 89).
- "CarShield takes reasonable and ongoing measures to maintain the secrecy of its Confidential Customer Information. Access to this information is limited to employees and service providers with a legitimate business need to know. For example, CarShield imposes confidentiality obligations on its employees and requires third parties—such as payment processing providers—to agree to contractual restrictions governing the use, retention, and disclosure of CarShield's Confidential Customer Information. Carshield also employs technical, administrative, and internal policy-based controls designed to prevent unauthorized access, use, or disclosure." (Doc. 94 at ¶ 45).

This, especially the facts alleged in the last bullet point, is sufficient to allege that Pelican obtained the information by improper means. The Court declines to dismiss the Misappropriation of Trade Secrets Claim.

### B. Counts I and III: Lanham Act and Unfair Competition Claim

Pelican argues that CarShield pleads insufficient facts to support the essential elements of its 15 U.S.C. § 1125(a) Lanham Act, False Advertising claim (Doc. 103 at 12–13). Specifically, Pelican argues that CarShield has failed to plead facts alleging (1) the widespread dissemination necessary to establish commercial advertisement or promotion under the Lanham Act (Doc. 103 at 13–14), (2) that only two of three statements Pelican allegedly made are literally false or misleading (Doc. 103 at 14), and (3) that CarShield does not establish sufficient facts to support an inference that the repair shop and third party administrator statements were material to a purchasing decision (Doc. 103 at 16). Pelican argues that CarShield's unfair competition claim fails for the same reasons as its Lanham Act, False Advertising claim. (Doc. 103 at 13 n.2).

#### 1. Legal Standard

15 U.S.C. § 1125(a) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Claims for false or deceptive advertising require:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to

> influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).

**2. Application of Law to Fact**

**a. Neither Count I nor Count III should be dismissed for failure of the Operative Complaint to allege commercial advertising or promotion.**

Pelican argues that Counts I and III should be dismissed because the Operative Complaint fails to allege facts to support the widespread dissemination necessary to establish commercial advertisement or promotion under the Lanham Act. (Doc. 103 at 13–14). Pelican argues that in this case, the widespread dissemination must have occurred to millions of United States consumers who own vehicles that are no longer under factory warranty. *Id.* at 13–14. Pelican states that the Operative Complaint's lowly allegation that CarShield received "hundreds of inbound calls" is insufficient to demonstrate widespread dissemination of the allegedly false statements. *Id.* at 14.

Under the Lanham Act, commercial advertising occurs when the defendant's "statements [are] disseminated sufficiently to the relevant purchasing public … within that industry." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1121 (8th Cir. 1999) (internal quotation marks omitted). The level of circulation required depends on the industry. *Id.* (holding that sending communications to only five recipients does not defeat the Lanham Act verdict because the relevant purchasing public depends on the specifics of the industry).

At this point, the Court must draw all reasonable inferences of fact in favor of the Plaintiff, CarShield. *See Park Irmat Drug Corp. v. Express Scripts Holding Company*, 911 F.3d 505, 512 (8th Cir. 2018). Even assuming that Pelican is correct that the relevant purchasing public are all Americans who have cars that are no longer under factory warranty, the Court does not have information on how many

people Pelican believes that would be. The fact that CarShield received "hundreds" of calls from consumers about Pelican's sales calls suggests that many more calls may have occurred, as it is reasonable to infer that most people do not have the time or interest in following up on calls like these. The Court therefore declines to dismiss Count I's Lanham Act False Advertising claim on this basis.

Because "Missouri common law [for an unfair competition] action utilizes the same elements as an action under the Lanham Act" the Court also declines to dismiss Count III's unfair competition claim. *Children's Factory, Inc. v. Benee's Toys, Inc.*, 160 F.3d 489, 491 n.2 (8th Cir. 1998).

**b. Neither Count I nor Count III should be dismissed on the basis that the Operative Complaint fails to allege statements that are false or misleading.**

Pelican argues that Counts I and III should be dismissed because they require a false or misleading statement, but that only one of the three statements Pelican allegedly made was false. (Doc. 103 at 14). The Court denies the motion to dismiss Counts I and III on this basis because CarShield need only allege one false statement to make a Lanham Act claim, and Pelican concedes that one statement is false.

CarShield's Operative Complaint alleges that Pelican sales agents made the following false and misleading statements:

1. Pelican agents falsely told customers that repair shops and car dealerships no longer accept CarShield coverage (Doc. 94 at ¶ 56).
2. Pelican sales agents falsely told consumers that CarShield used unrelated third parties to administer and pay repair claims. *Id.*
3. Pelican salespeople falsely told customers that unlike CarShield, Pelican administers its own claims. *Id.*

(Doc. 94 at ¶ 56). Pelican concedes that the statement concerning Pelican administering its own claims is false (Doc. 103 at 14). Because only one false statement is necessary, 15 U.S.C. § 1125(a)(1); *Children's Factory*, 160 F.3d at 491 n.2, the Court declines to dismiss Counts I and III on this basis.

**c. Neither Count I nor Count III should be dismissed on the basis that CarShield allegedly failed to establish**

**the materiality of two of the three allegedly false statements.**

Pelican argues that this Court should dismiss Counts I and III because the Operative Complaint does not allege sufficient facts to support an inference that two of the three allegedly false statements were material to a purchasing decision (Doc. 103 at 16). Even assuming that—for liability under the Lanham Act or a Missouri law unfair competition claim—a false statement must be material to a purchasing decision, this is not a basis to dismiss in this case because Pelican fails to argue that the third allegedly false statement was not material to a purchasing decision. One material false statement is all it takes to state a claim for either False Advertising under the Lanham Act or a Missouri law unfair competition claim. 15 U.S.C. § 1125(a)(1); *Children's Factory*, 160 F.3d at 491 n.2 . Therefore, this Court declines to dismiss Counts I or III.

**C. Count II: Injurious Falsehood Claim**

Pelican asks that this Court dismiss Count II's Missouri-law injurious falsehood claim (Doc. 103 at 17). Pelican argues that this claim should be dismissed for three reasons. First, Pelican argues that the claim should be dismissed because it sounds in fraud, is therefore subject to Federal Rule of Civil Procedure 9(b)'s particularity requirement, and that the Operative Complaint does not plead fraud with sufficient particularity (Doc. 103 at 17). Second, Pelican argues that the claim should be dismissed because the Operative Complaint fails to plead that Pelican made a defamatory statement regarding CarShield, as required to state a claim for injurious falsehood under Missouri law. (Doc. 103 at 18). Third, Pelican argues that the Operative Complaint fails to meet the heightened pleading requirements in Rule 9(g). (Doc. 103 at 17). None of these arguments are a basis for dismissing Count II.

**1. Rule 9(b) is not a basis for dismissing Count II.**

Rule 9(b) is not a basis for dismissing Count II. Rule 9(b) does require that when pleading fraud, "a party must state with particularity the circumstances constituting fraud or mistake" but "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To comply with

Rule 9(b)'s particularity requirement, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Whether Rule 9(b) is triggered by a state-law claim sounding in fraud is a matter of substantive state law. *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018) (citation omitted).

CarShield argues that Rule 9(b) "does not apply to Missouri state-law claims for injurious falsehood" (Doc. 118 at 28), and the Court agrees. In a claim for injurious falsehood:

> [o]ne who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*State ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922, 928 (Mo. 2005).

Pelican points to no binding precedent, and this Court has found no requirement, that claims for injurious falsehood under Missouri law are subject to Rule 9(b). Under Missouri law, a claim of fraud includes elements not required for an injurious falsehood claim. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010). For instance, a claim of fraud requires reliance by the hearer on the statement as well as the hearer's right to rely upon the statement. *Id.* at 132. Because a claim for injurious falsehood does not include all the elements of fraud under Missouri law, *see Ross*, 163 S.W.3d at 928, injurious falsehood claims are not subject to Rule 9(b).

**2. CarShield sufficiently pled a defamatory statement for Count II to survive.**

Pelican argues that this Court should dismiss Count II because CarShield only pled one type of false statement—that Pelican administers its own claims—but that

this is not a defamatory statement against CarShield as required for a defamation claim (Doc. 103 at 18). CarShield responds that the defamatory statements in the Operative Complaint include that (a) Pelican falsely told consumers that repair facilities no longer accept CarShield coverage, (b) that CarShield relies on unrelated third parties to administer claims, and (c) that Pelican administers its own claims (Doc. 94 at ¶ 56). CarShield has the better of the argument.

A defamatory statement is one that tends to "harm the reputation of another as to lower him in the estimation of the community or to defer third persons from associating or dealing with him." *Topper v. Midwest Div., Inc.*, 306 S.W.3d 117, 128 (Mo. App. 2010). CarShield need only identify one defamatory statement, which it has done. The statements that repair facilities no longer accept CarShield and that CarShield relies on unrelated third parties to administer claims both are false and tend to harm CarShield's reputation. Thus, the Court denies the motion to dismiss Count II on this basis.

**3. Rule 9(g) is not a basis to dismiss the Operative Complaint.**

Pelican argues that Count II, injurious falsehood, must be dismissed for failure to satisfy the heightened pleading requirement in Rule 9(g). (Doc. 103 at 17). Rule 9(g) provides that "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). Pelican claims that the injurious falsehood claim requires a party to claim an item of special damage, citing Eastern District of Missouri cases from 2009 and 2025 and a Missouri Supreme Court case from 2005. (Doc. 103 at 17–18). Pelican's argument fails.

CarShield has satisfied the pleading requirement of Rule 9(g) by "specifically stat[ing]" the items of special damage claimed. Fed. R. Civ. P. 9(g). "'Special damages' are those types of damages that, although resulting from the wrongful act, are not usually associated with the claim in question and must be plead in order to avoid unfair surprise to the defendant." *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922 n.10 (8th Cir. 2004). Rule 9(g)'s requirement of specificity is not meant to be demanding. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1311 (4th ed. 2026).

CarShield's allegations of special damage contain enough specificity to spare Pelican any unfair surprise. In the Operative Complaint, CarShield explains how Pelican's wrongful conduct inflicted particular kinds of pecuniary losses. (Doc. 94 at ¶ 123). For instance, CarShield alleges that Pelican's false statements caused customers to drop CarShield, resulting in loss of revenues and renewal income. *Id.* Pelican's false statements also forced CarShield to bear increased customer service costs and retention costs. *Id.* Furthermore, Pelican's false statements caused measurable diminution in goodwill, trust, and reputation. *Id.* These allegations permit Pelican to draw up a responsive pleading, so there is no unfair surprise. *See* Wright & Miller, *supra* § 1311. Thus, the Court denies the motion to dismiss Count II based on Rule 9(g).

**D. Count IV: Tortious Interference with Business Expectancy Claim**

Pelican moves to dismiss Count IV's tortious interference with business expectancy claim on the grounds that Pelican was justified in allegedly interfering in any of CarShield's business relationships. (Doc. 103 at 19). This is not a basis for dismissing Count IV.

**i. Legal Standard**

A tortious inference with business expectancy claim requires "(1) a contract or valid business relationship or expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the defendant's conduct." *CIBC Bank USA v. Williams*, 669 S.W.3d 298, 310 (Mo. App. 2023) (citation omitted).

If a defendant has a legitimate interest in the business expectancy plaintiff seeks to protect, this constitutes a justification for the defendant interfering in the business expectancy—unless the plaintiff can show that the defendant used improper means to further its own interests. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 252 (Mo. 2006). "Improper means are those that are independently wrongful, such

as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.*

### ii. Application of Law to Fact

Pelican argues that the Court should dismiss Count IV because CarShield does not adequately allege that Pelican lacked justification for its statements, as two of the three allegedly false statements were true (Doc. 103 at 19). As this Court established above, at least one of the alleged statements was false. This counts as "improper means" that defeats "justification." The Court declines to dismiss Count IV.

## CONCLUSION

Pelican Investment Holdings, LLC Motion to Dismiss the Second Amended Complaint (Doc. 102) is **DENIED**.

**SO ORDERED,**

This 24th day of September, 2026.

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE