**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CARSHIELD, LLC d/b/a CARSHIELD, and AMERICAN AUTO SHIELD, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS, LLC, NATIONAL ADMINISTRATIVE SERVICE CO., LLC, and SING FOR SERVICE, LLC d/b/a MEPCO,<br><br>*Defendants.* | No. 4:25-cv-01566-MAL |

**MEMORANDUM & ORDER**

Before the Court is Defendant National Administrative Service Co., LLC's Motion to Dismiss the Second Amended Complaint (Doc. 100). For the following reasons, the Court **DENIES** the motion.

## I. Facts and Background[1]

This case is about communications regarding vehicle extended warranties. (Doc. 94 at ¶ 1). Plaintiffs and Defendant Pelican sell car extended warranties. *Id.* Pelican sold contracts written for Defendant National Administrative Service Co. ("NASC") pursuant to a written agreement. *Id.* at ¶¶ 12, 61. The agreement grants NASC control over Pelican's advertising and marketing of NASC's warranty contracts. *Id.* at ¶¶ 13, 62. NASC exercises this control by providing seller guides to Pelican, regularly reviewing and providing feedback on Pelican's advertising and marketing materials, and reviews telemarketing scripts and talking points. *Id.* at ¶¶ 13, 64.

---

[1] All facts pleaded in the complaint are assumed true when deciding a motion to dismiss under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 556 (2007).

According to CarShield, for most companies in the car extended warranty sector, the process can be fragmented and include multiple actors from the seller or marketing company that promotes the coverage, to the financing company that facilitates payments, to a third-party administrator that manages claims and is responsible for honoring coverage when issues arise. *Id.* at ¶ 3. CarShield's edge in the business is that they do not outsource claims, but rather their warranties are administered by an affiliated, in-family administrator. *Id.* at ¶ 5. According to CarShield, products that are marketed as being administered by an affiliated, in-family administrator signal accountability and reliability, as opposed to the perceived risk of a product administered by an unrelated third party. *Id.* at ¶ 4. CarShield has worked to build brand recognition and consumer trust as a leading provider of car extended warranty products. *Id.* at ¶ 6.

However, Pelican launched a telemarketing operation to undermine CarShield's reputation. *Id.* at ¶¶ 7–8. It went like this. Pelican would call CarShield's existing and prospective customers about switching their coverage to a Pelican plan. *Id.* at ¶ 8. During the call, Pelican would make false statements such as telling consumers that car dealers and repair shops no longer accept CarShield plans and that CarShield does not administer its own claims. CarShield believes that Pelican obtained and used CarShield's confidential customer lists to target its customers. *Id.* at ¶ 11. Because of Pelican's calls, consumers have called CarShield or attempted to cancel CarShield coverage, purchased Pelican plans, or asked for refunds, clarification, or emergency assistance. *Id.* at ¶ 60.

CarShield's Second Amended Complaint ("Operative Complaint") brings eleven counts. The Operative Complaint alleges three counts against NASC: Count V (False Advertising in Violation of the Lanham Act), Count VI (Injurious Falsehood), and Count VII (Unfair Competition). Each of these Counts was brought on the basis of four legal theories: vicarious liability, agency, apparent authority, and ratification. (Doc. 94 at 35, 37–8). NASC moves to dismiss all three counts against it. (Doc. 100 at 1).

## II. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. At this stage, the Court accepts as true the factual allegations in the complaint. *Id.*

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id.*

## III. The Court declines to dismiss for lack of personal jurisdiction over NASC.

NASC argues that this Court should dismiss all claims CarShield brings against NASC because CarShield has failed to demonstrate that NASC has sufficient minimum contacts for a Missouri court to exercise personal jurisdiction over NASC (Doc. 101 at 7). CarShield counters that NASC waived any personal jurisdiction defense because it litigated this case on the merits and did not raise the defense in its original motion to dismiss before CarShield amended its original complaint (Doc. 118 at 13). NASC replies that any waiver argument fails because CarShield's second amended complaint changed the theory or scope of the case (Doc. 134 at 2).

### A. Legal Standard

A party may move to dismiss a claim based on lack of personal jurisdiction. Fed. R. Civ. P 12(b)(2). But a party waives this defense under Rule 12(h) if it fails to include the motion in the circumstances described in Rule 12(g)(2). Rule 12(g)(2) provides that "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Thus, a party must raise a Rule 12(b)(2) motion for lack of personal jurisdiction the first time it raises a Rule 12 defense. The ban on successive Rule 12 motions is "salutary in that it works against piecemeal consideration of a case." Fed. R. Civ. P. 12(g) Advisory Committee Note to 1966 amendment.

The question here is how an amended complaint affects Rule 12(h). "An amended complaint supersedes an original complaint and renders the original complaint without legal effect." *Allen v. Amsterdam*, 132 F.4th 1065, 1068 (8th Cir. 2025) (quoting *In re Atlas Van Lines*, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)). However, "if [the] personal jurisdiction defense has been waived by failure to raise it in response to [the] original complaint, it may not be resurrected merely because [an] amended complaint was filed." *Ne. Iowa Ethanol, L.L.C. v. Glob. Syndicate Int'l, Inc.*, 247 F. App'x 849, at *1 (8th Cir. 2007) (explaining *Gilmore v. Shearson/Am. Express*

*Inc.*, 811 F.2d 108, 112 (2d Cir.1987)); *see* 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.").

When determining whether a defendant has waived a personal jurisdiction defense after a plaintiff files an amended complaint, district courts in the Eighth Circuit consider whether "the amended complaint changes the theory or scope of the case." *Davis v. Buchanan Cnty. Missouri*, 2019 WL 7116363, at *3 (W.D. Mo. Dec. 23, 2019) (quoting *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011)); *First Liberty Ins. Corp. v. Examworks, LLC*, 2023 WL 6049509, at *4 (D.S.D. Sept. 15, 2023).

**B. Application of Law to Facts**

Here, NASC waived the personal jurisdiction defense. NASC filed a motion to dismiss on December 12, 2025, and did not raise any personal jurisdiction defense under Rule 12(b)(2), instead moving to dismiss under Rule 12(b)(6). (Doc. 62). CarShield filed a first amended complaint and then a second amended complaint before NASC responded to the first amended complaint. (Docs. 79, 94). In moving to dismiss the Second Amended Complaint, NASC raises a personal jurisdiction defense for the first time. But NASC has waived this defense unless it can demonstrate that the second amended complaint changes the theory or scope of the case from the original complaint. *See Davis*, 2019 WL 7116363, at *3. It does not.

Though NASC argues that the Operative Complaint expands allegations against NASC by describing NASC's control over Pelican's marketing, this is incorrect. The Operative Complaint adds no new causes of action against NASC. *Compare* (Doc. 1 at 14–16) (alleging Lanham Act violation, injurious falsehoods, and unfair competition) *with* (Doc. 94 at 35–8) (alleging Lanham Act violation, injurious falsehoods, and unfair competition). The additional information CarShield added does not change the jurisdictional analysis, and a 12(b)(2) motion would have been

available to NASC from the time CarShield filed its original complaint. NASC has thus waived personal jurisdiction.[2]

## IV. The Court denies the motion to dismiss on the grounds that the Operative Complaint supports none of the theories of liability (vicarious liability, agency, apparent authority, and ratification).

NASC moves to dismiss Counts V, VI, and VII on the grounds that the Operative Complaint supports none of the four theories of liability (vicarious liability, agency, apparent authority, and ratification). This Court declines to do so. For Counts V, VI, and VII to survive a motion to dismiss, the Operative Complaint need only set forth a theory of liability under one of the four theories of liability (vicarious liability, agency, apparent authority, and ratification) for each Count. Because the Operative Complaint does so, Counts V, VI, and VII survive.

In fact, Counts V, VI, and VII all state a claim under the agency theory of liability. NASC argues that none of these Counts survive under the agency theory of liability for two independent reasons: (1) CarShield fails to state an underlying claim against Pelican, meaning that NASC cannot be liable as an agent and (2) CarShield fails to sufficiently plead facts showing how or when NASC exercised control over any of Pelican's sales representatives or their untruthful statements. *Id.* at 6, 11–13. Both arguments fail.

### A. Because CarShield states an underlying claim against Pelican, the theory of agency need not be dismissed on this basis.

NASC first argues that it cannot be held liable under an agency theory for the acts of Pelican because there is no underlying claim against Pelican. Not so. As

[2] In NASC's Reply, NASC asks that if NASC did waive the personal jurisdiction defense by not including it in its original motion to dismiss, that the Court permit NASC to amend that motion to assert the defense. (Doc. 134 at 3). NASC cites no authority showing that this Court should permit an amendment. Therefore, the Court declines to allow NASC to amend its original motion to dismiss.

discussed in the order denying the motion to dismiss all claims against Pelican, (Doc. 178), claims against Pelican survive the motion to dismiss.

### B. Because CarShield alleges facts showing NASC's control over Pelican's actions and statements, the theory of agency need not be dismissed on this basis.

NASC claims that the agency theory of liability for Counts V, VI, and VII cannot survive because CarShield did not plead facts showing how or when NASC exercised control over any of Pelican's sales representatives or their untruthful statements. This argument does not work for any of Counts V, VI, or VII.

A principal is liable for an agent's actions when both: "(1) the principal [ ] consent[s], expressly or impliedly, to the agent's acting on the principal's behalf; and, (2) the agent [is] subject to the principal's control." *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 385 (Mo. App. 1999); *Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. 2008) (citing Restatement (Second) of Agency § 1 (1958)). The principal's consent may be manifested by words or conduct. *Bach*, 257 S.W.3d at 608. "[T]he touchstone [of liability of a principal for an agent's actions] is whether the [principal] has the control or right to control the conduct of another in the performance of an act." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. 1996).

#### 1. CarShield has adequately alleged agency liability for Counts V, VI, and VII.

NASC argues that it cannot be held liable for Pelican's actions because CarShield does not allege facts showing that (a) NASC consented for Pelican to act as NASC's agent and (b) that NASC exercised control over what Pelican sales agents said in consumer calls, including the alleged false statements. (Doc. 101 at 12); (Doc. 124 at 5–6). This is wrong. CarShield has adequately alleged agency liability for Counts V, VI, and VII.

**a. The Operative Complaint alleges facts showing that NASC consented to Pelican acting as NASC's agent.**

Contrary to NASC's arguments, CarShield's Operative Complaint plausibly alleges that NASC consented to Pelican acting on NASC's behalf. *See* Doc. 94 at ¶ 61–62 (describing the written marketing agreement between Pelican and NASC where both parties agreed that Pelican would act as a marketer and seller of NASC vehicle service contracts). The Operative Complaint alleges that "the agreement" between NASC and Pelican "grants NASC authority and control over the advertising, marketing, and sale of NASC-administered plans, including the right to require compliance with applicable laws and, on information and belief, to review, approve, reject, modify, or impose constraints on the marketing statements and sales practices used by Pelican." (Doc. 94 at ¶ 62).

**b. The Operative Complaint alleges facts showing that Pelican was subject to NASC's control.**

And though NASC disputes that the Operative Complaint plausibly pleads that Pelican was subject to NASC's control, this too is wrong. *See id.* at ¶ 62 ("The agreement also grants NASC authority and control over the advertising, marketing, and sale of NASC-administered plans, including the right to require compliance with applicable laws and, on information and belief, to review, approve, reject, modify, or impose constraints on the marketing statements and sales practices used by Pelican."); *id.* at ¶ 63 ("NASC has input and control over … call scripts, sales talking points, and rebuttal points used by Pelican's sales agents."). The Operative Complaint also pleads that Pelican made the false statements while acting within the scope of NASC's authority. *Id.* at ¶ 144.

With respect to NASC's argument that NASC did not ratify the specific allegedly illegal statements, (Doc. 101 at 17), this does not defeat agency liability. "[G[enerally, the wrongful acts of an agent can be imputed to the principal where an agency relationship exists." *Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 323 (Mo. 2014). An agency relationship exists when the principal controls "the ends of the agent's activities; the principal does not have the right to

control or direct the physical movements of her agent in accomplishing the final result." *Bach*, 257 S.W.3d at 608. The Operative Complaint alleges that NASC and Pelican had an agreement that "grant[ed] NASC authority and control over the advertising, marketing, and sale of NASC-administered plans" (Doc. 94 at ¶ 62); "NASC had input and control over [advertising and marketing] materials—including *call scripts*, sales talking points, and rebuttal points" (*Id.* at ¶ 63) (emphasis added); NASC exercised control over the telemarking campaign by "providing Pelican with seller compliance guides, marketing standards, and manuals." (*Id.* at ¶ 64). From this, it is fair to infer that NASC was controlling Pelican's ends, and it does not matter if NASC specifically asked Pelican to make the false statements because "the wrongful acts of an agent can be imputed to the principal where an agency relationship exists." Signalpoint Asset Mgmt., LLC, 422 S.W.3d at 323. And CarShield alleges that Pelican made these false statements within its scope of authority as an agent of NASC. (Doc. 94 at ¶ 144). Therefore, CarShield has adequately pled agency liability for Counts V, VI, and VII.

**2. The Injurious Falsehood Claim is not subject to Rule 9(b)'s heightened pleading requirement.**

NASC argues the Court should dismiss Count VI's injurious falsehood claim because the Operative Complaint fails to meet Rule 9(b)'s heightened pleading standard for fraud—namely that fraud must be pleaded with particularity. CarShield counters that Rule 9(b) does not apply to injurious falsehood claims (Doc. 118 at 28–29). This argument fails. For the reasons stated in Doc. 178 (our prior order), Rule 9(b) does not apply to injurious falsehood claims.

Because CarShield has adequately alleged liability through an agency theory, CarShield's Counts V, VI, and VII survive, and the Court need not address NASC's other arguments that the other theories of liability (*e.g.*, apparent authority and ratification) fail. *See McMorrow v. Core Props., LLC*, 2023 WL 8697795, at *14 (E.D. Mo. Dec. 15, 2023) (holding because the court found plaintiff established one theory of vicarious liability, the court need not address other theories for vicarious liability).

## CONCLUSION

National Administrative Service Co., LLC's Motion to Dismiss the Second Amended Complaint (Doc. 100) is **DENIED**.

**SO ORDERED,**

This 25th day of September, 2026.

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE