**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CARSHIELD, LLC d/b/a CARSHIELD, and AMERICAN AUTO SHIELD, LLC<br><br>*Plaintiffs,*<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS, LLC, NATIONAL ADMINISTRATIVE SERVICE CO., LLC, and SING FOR SERVICE, LLC d/b/a MEPCO,<br><br>*Defendants.* | No. 4:25-cv-01566-MAL |

**MEMORANDUM & ORDER**

Before the Court is Defendant Mepco's Motion to Dismiss all Counts against Mepco (Counts 8, 9, and 10) of Plaintiff's Second Amended Complaint ("Operative Complaint"). (Doc. 105). For the following reasons, the Court **GRANTS** the motion.

## I. Facts & Background[1]

This case is about vehicle extended warranties (Doc. 94 at ¶ 1). Plaintiffs and Defendant Pelican sell car extended warranties. *Id*. Pelican sold contracts written for Defendant National Administrative Service Co. ("NASC") pursuant to a written agreement. *Id*. at ¶¶ 12, 61. Mepco finances the contracts Pelican sells on behalf of NASC. *Id*. at ¶ 14. Mepco processes the consumer's payment application, funds the contract, disperses proceeds to Pelican and NASC, and collects its own fees and interest. *Id*. at ¶ 72. CarShield alleges that Mepco had visibility into Pelican's day-to-day business activities that signaled deceptive and unlawful sales conduct because Mepco was the payment processor for Pelican. *Id*. at ¶ 74.

[1] All facts pleaded in the complaint are assumed true when deciding a motion to dismiss under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 556 (2007).

According to CarShield, for most companies in the car extended warranty sector, the process can be fragmented and include multiple actors from the seller or marketing company that promotes the coverage, to the financing company that facilitates payments, to a third-party administrator that manages claims and is responsible for honoring coverage when issues arise. *Id.* at ¶ 3. CarShield's edge in the business is that they do not outsource claims, but rather their warranties are administered by an affiliated, in-family administrator. *Id.* at ¶ 5. According to CarShield, products that are marketed as being administered by an affiliated, in-family administrator signal accountability and reliability, as opposed to the perceived risk of a product administered by an unrelated third party. *Id.* at ¶ 4. CarShield has worked to build brand recognition and consumer trust as a leading provider of car extended warranty products. *Id.* at ¶ 6.

However, Pelican launched a telemarketing operation to undermine CarShield's reputation. *Id.* at ¶¶ 7–8. It went like this. Pelican would call CarShield's existing and prospective customers about switching their coverage to a Pelican plan. *Id.* at ¶ 8. During the call, Pelican would make false statements such as telling consumers that car dealers and repair shops no longer accept CarShield plans and that CarShield does not administer its own claims. *Id.* at ¶ 9. CarShield believes that Pelican obtained and used CarShield's confidential customer lists to target their customers. *Id.* at ¶ 11. Because of Pelican's calls, consumers have called or attempted to cancel CarShield coverage, have purchased Pelican plans, or have asked for refunds, clarification, or emergency assistance. *Id.* at ¶ 60. CarShield now seeks to hold Mepco liable for Pelican's actions. *Id.* at ¶ 79.

CarShield brings 3 counts against Mepco: Count 8 (false advertising in violation of Section 43(a) of the Lanham Act), Count 9 (injurious falsehood under Missouri law), and Count 10 (unfair competition under Missouri law). (Doc. 94 at 40–44). Mepco moves to dismiss all three claims CarShield brings against it. (Doc. 106 at 6).

## II. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. At this stage, the Court accepts as true the factual allegations in the complaint. *Id.*

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id.*

## III. Application of Law to Facts

Mepco argues that this Court should dismiss Counts 8, 9, and 10 of the Operative Complaint because all three of these counts are based on Mepco's liability

for what Pelican did, but none of the counts alleges sufficient facts for liability. (Doc. 106 at 11–19). The Court agrees. The Operative Complaint proffers three theories of liability for each of Counts 8, 9, and 10: (A) agency, (B) apparent authority, and (C) ratification.[2] (Doc. 94 at 40, 42–43). It also proffers an additional theory of liability for Count 8—contributory liability. (Doc. 94 at ¶ 176). Because the Operative Complaint fails to allege sufficient facts for any of these theories to succeed, the Court dismisses Counts 8, 9, and 10 against Mepco.

**A. Mepco is not liable for Counts 8, 9, or 10 based on Agency.**

Mepco claims that it cannot be liable for violations of Counts 8, 9, or 10 based on the law of agency because Mepco had no right to control Pelican in its advertising and marketing activities. (Doc. 106 at 13). The Court agrees with Mepco.

**i. Legal Standard**

For Mepco to be liable on an agency theory, there must be an agency relationship between Mepco and Pelican. *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. 2002). The Missouri Supreme Court, having adopted the Second Restatement of Agency, looks to three essential characteristics of the agency relationship: (1) "that an agent holds a power to alter legal relations between the principal and a third party," (2) "that an agent is a fiduciary with respect to matters within the scope of the agency," and (3) "that a principal has the right to control the conduct of an agent with respect to matters entrusted to the agent." *State ex rel. Ford Motor Co.*, 63 S.W.3d at 642 (citing Restatement Second of Agency §§ 12–14 (1958)). The absence of one element defeats a putative agency relationship. *Bacon*, 63 S.W.3d at 642. The Missouri Supreme Court's approach reflects general principles of agency law. Restatement (Second) of Agency §§ 12–14 (1958).

**ii. Application of Law to Facts**

Here, there was no agency relationship between Mepco and Pelican because CarShield's allegations do not plausibly suggest that Mepco had the right to control

[2] In the Operative Complaint, CarShield mentions vicariously liability as a separate theory. (Doc. 94 at 40–43). But elsewhere, CarShield acknowledges that vicarious liability is shown by actual authority, apparent authority, or ratification. (Doc. 120 at 13).

Pelican's advertising and marketing activities. The written Dealer Agreement between Pelican and Mepco essentially established a division of labor between the two companies. (Doc. 94 at ¶¶ 72, 171–72). Pelican marketed the contracts; Mepco financed them. *Id.* The written agreement did not task Mepco with monitoring, supervising, or otherwise overseeing Pelican's marketing calls to customers. *Id.* at ¶ 172. CarShield alleges that the contract required Pelican to follow all applicable federal and state laws, including laws relating to consumer protection and false advertising. *Id.* But within the boundaries set by federal and state law, Pelican seems to have enjoyed free rein in deciding how to market and advertise the vehicle service contracts. *See id.* at ¶¶ 168–78. Because Mepco did not have the right to control Pelican's marketing and advertising activities, Pelican was not Mepco's agent. *See Bacon*, 63 S.W.3d at 642. CarShield also alleges that Mepco knew about Pelican's wrongdoing. Doc. 94 at ¶ 174. But without the right of control, knowledge alone does not give rise to an agency relationship. *See id.* Thus, CarShield's agency theory fails.

**B. Mepco is not liable for Counts 8, 9, or 10 based on Apparent Authority.**

CarShield's Second Amended Complaint pleads vicarious liability through apparent authority (Doc. 94 at 38–43). Mepco argues that CarShield has not made any allegations that show Pelican was acting with apparent authority (Doc. 106 at 13). The Court agrees with Mepco.

**i. Legal Standard**

Apparent agency is created by acts of the purported principle. *Bost v. Clark*, 116 S.W.3d 667, 677 (Mo. App. 2003). Apparent agency requires:

> (1) the apparent principal manifested his consent to the exercise of such authority or knowingly permitted the apparent agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the

> transaction executed by the agent does not bind the principal.

*Id*. (quoting *Link v. Kroenke*, 909 S.W.2d 740, 745 (Mo. App. 1995)) (cleaned up). In other words, apparent agency is created by "any conduct by the principal which, if reasonably interpreted, would cause a third person to believe that the principal consents to the acts of the agent." *Lynch v. Helm Plumbing & Elec. Contractors, Inc.*, 108 S.W.3d 657, 660 (Mo. App. 2002).

**ii. Application of Law to Facts**

CarShield's apparent agency theory fails because the Complaint does not suggest that Mepco's conduct towards consumers led the consumers to believe Mepco consented to Pelican's sales tactics. CarShield argues in their motion in opposition that consumers see Mepco as the principal who backs its agent Pelican's warranty plans. (Doc. 120 at 14). Further, Pelican provides a Mepco payment plan to consumers, making the consumer understand that Pelican markets plans for Mepco. *Id*. at 14–15. First, these allegations do not appear in the Second Amended Complaint. (Doc. 94). Therefore the Court will not consider them. As a general rule, the Court "will not consider arguments raised for the first time in a reply brief." *Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006). "[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Fischer v. Minneapolis Pub. Schs.*, 792 F.3d 985, 990 n.4 (8th Cir. 2015) (quoting *Car Carriers, Inc.* v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)). Further, even if it were the case that Mepco represented that Pelican was acting on Mepco's behalf, nothing in the Complaint suggests customers believed Pelican possessed authority to act for Mepco and changed their position based on this. *See generally* Doc. 94. Accordingly, CarShield's apparent agency theory fails.

**C. CarShield is not liable for Counts 8, 9, or 10 based on Ratification.**

CarShield alleges that Mepco ratified Pelican's deceptive conduct (Doc. 104 at ¶¶ 177–78, 182, 190). Mepco argues that Carshield failed to plead factual allegations which would support a theory that Mepco ratified Pelican's marketing and

advertising practices and failed to demonstrate that Pelican was acting as Mepco's agent. (Doc. 106 at 19). The Court agrees with Mepco.

**i. Legal Standard**

Ratification "is an act by a principal whereby he adopts or confirms an act of another purported to have been done on behalf of the principal." *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746, 756 (Mo. App. 1990). According to the Restatement (Third) of Agency, ratification requires an agency relationship or "the act of a person who purported to be an agent but was not." Restatement (Third) Of Agency § 4.03 (2006). The burden of proof of ratification rests with the plaintiffs. *Empson v. Missouri Highway & Transp. Comm'n*, 649 S.W.2d 517, 523 (Mo. Ct. App. 1983).

**ii. Application of Law to Fact**

CarShield's ratification theory fails because the Second Amended Complaint does not establish that there was an agency relationship between Mepco and Pelican, nor does it establish that Pelican purported to be an agent of Mepco. Because "[r]atification requires a principal-agent relationship which is not present between" Pelican and Mepco, CarShield has failed to plead ratification. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2016 WL 880402, at *6 n. 1 (E.D. Mo. Mar. 8, 2016).

**D. Mepco is not liable for Count 8 under Contributory Liability**

CarShield's Second Amended Complaint alleges that Mepco is contributorily liable for Count 8's Lanham Act claim. (Doc. 94 at ¶ 176). Mepco argues that (1) contributory liability does not apply to false advertising claims under Section 43(a) of the Lanham Act, and (2) even if CarShield could bring a claim for contributory liability, CarShield has failed to state a claim. (Doc. 106 at 16–17). The first reason is dispositive.

### i. Legal Standard

The Eleventh Circuit has recognized a contributory false advertising claim, but "appears to stand alone in that regard." *Acad. of Drs. of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017). "The Supreme Court has not specifically approved of, or rejected, such a claim [for contributory false advertising under § 43(a) of the Lanham Act], and no other Circuit Court of Appeal, including the Eighth Circuit, has, either." *Dental Recycling N. Am., Inc. v. Stoma Ventures, LLC*, No. 4:23CV670 CDP, 2023 WL 6389071, at *6 (E.D. Mo. Oct. 2, 2023).

### ii. Application of Law to Facts

Because the Lanham Act does not expressly contemplate contributory liability for a false advertising claim,[3] and because most circuits, including the Eighth Circuit, have not recognized such a theory, Count 8 cannot be sustained based on contributory liability.

## CONCLUSION

Mepco's Motion to Dismiss Plaintiff's Second Amended Complaint, (Doc. 105), is **GRANTED**.

**SO ORDERED,**

This 29th day of September, 2026.

Maria A. Lanahan
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

[3] 15 U.S.C. § 1125(a).